UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RANDOLPH SCOTT DIABO,

              Plaintiff,                Case No. 2:17-cv-76

v.                                  Honorable Gordon J. Quist

UNKNOWN PARTIES #1 et al.,

              Defendants.
_____/

## OPINION

      This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.      Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan, and at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues Unknown Parties #1 "Seven Unknown Treatment Team," Unknown Party #1 "Deputy Warden for Security," Unknown Party #2 "Medical Administrator," Warden Robert Napel, Unknown Party #3 "Deputy Warden for Administrator," Kathleen A. Mutscher, PH.D. "Director of Mental Health Services," and Unknown Parties #2 "Trustees for Michigan Master Health Plan."

In his amended complaint (ECF No. 8), Plaintiff alleges that he arrived at LMF in the beginning of 2014, and refused to go to the general population. Therefore, Plaintiff was placed in segregation. A few days later, Plaintiff was shown a ticket which falsely asserted that a weapon had been found in his property. A prison counselor interviewed Plaintiff on two occasions. After being interviewed the second time, Plaintiff was taken to a building for a video conference with an unknown woman. The woman asked Plaintiff how he was doing, as well as other questions. After the conference, the woman told officers not to rough Plaintiff up. Shortly thereafter, Plaintiff was transferred to MBP.

When Plaintiff arrived at MBP, an unknown official took Plaintiff to a conference room and asked Plaintiff if he was going to be a problem. Plaintiff said that he was not. A half dozen officers then grabbed him and escorted him to Query Unit. Officials placed Plaintiff in a cell and told him to strip naked. Plaintiff was then given a "Bam-Bam" (suicide) gown. Plaintiff

2

met with a psychologist twice in the following days. At some point, Plaintiff was drawing a picture out of the Parkinson's law book when the "psyche" walked past Plaintiff's cell. The "psyche" saw the stick figures that Plaintiff was drawing and asked if he could make a copy. Plaintiff refused. During the hearing on Plaintiff's involuntary treatment, the "psyche" presented a drawing which he claimed was based on Plaintiff's drawing. When asked, Plaintiff admitted that he had drawn the picture, but Plaintiff was not allowed to explain why he had drawn it or what it represented. Based on the evidence presented at the hearing, Plaintiff was diagnosed with a psychotic disorder and it was determined that Plaintiff should be involuntarily medicated. Plaintiff appealed the determination, but his appeal was denied. Plaintiff was placed in segregation and was not allowed to go to the law library. Plaintiff claims that he was never told that he could appeal again.

Plaintiff claims Defendants' conduct violated his rights under the Eighth and Fourteenth Amendments, as well as under state law. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the Court notes that Plaintiff fails to make specific factual allegations against Defendants in this case. Plaintiff's allegations merely recite what happened to him at LMF and MBP, without any reference to the identity of the specific individuals involved in his treatment. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional

4

behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough; nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants were involved in any of the misconduct asserted in his amended complaint. Accordingly, he fails to state a claim against them.

Plaintiff claims that Defendants violated his rights under the Eighth and Fourteenth Amendments when they diagnosed him with a psychotic disorder and had him placed on anti-psychotic drugs. In *Vitek v. Jones*, 445 U.S. 480, 493 (1980), the United States Supreme Court held that a criminal conviction does not authorize the state to classify a prisoner as mentally ill and to subject him to involuntary psychiatric treatment without affording him additional due process protections. The *Vitek* Court noted that the state had a strong interest in segregating and treating mentally ill patients, but that a prisoner's interest in not being arbitrarily classified as mentally ill and subjected to involuntary treatment was also strong. The Court concluded that the state must apply "appropriate procedural safeguards against error." *Id.* at 495.

In a subsequent case, the Supreme Court addressed the involuntary medication of a prisoner pursuant to the following policy:

> Policy 600.30 was developed in partial response to this Court's decision in *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). The Policy has several substantive and procedural components. First, if a psychiatrist determines that an inmate should

be treated with antipsychotic drugs but the inmate does not consent, the inmate may be subjected to involuntary treatment with the drugs only if he (1) suffers from a "mental disorder" and (2) is "gravely disabled" or poses a "likelihood of serious harm" to himself, others, or their property. Only a psychiatrist may order or approve the medication. Second, an inmate who refuses to take the medication voluntarily is entitled to a hearing before a special committee consisting of a psychiatrist, a psychologist, and the Associate Superintendent of the Center, none of whom may be, at the time of the hearing, involved in the inmate's treatment or diagnosis. If the committee determines by a majority vote that the inmate suffers from a mental disorder and is gravely disabled or dangerous, the inmate may be medicated against his will, provided the psychiatrist is in the majority.

Third, the inmate has certain procedural rights before, during, and after the hearing. He must be given at least 24 hours' notice of the Center's intent to convene an involuntary medication hearing, during which time he may not be medicated. In addition, he must receive notice of the tentative diagnosis, the factual basis for the diagnosis, and why the staff believes medication is necessary. At the hearing, the inmate has the right to attend; to present evidence, including witnesses; to cross-examine staff witnesses; and to the assistance of a lay adviser who has not been involved in his case and who understands the psychiatric issues involved. Minutes of the hearing must be kept, and a copy provided to the inmate. The inmate has the right to appeal the committee's decision to the Superintendent of the Center within 24 hours, and the Superintendent must decide the appeal within 24 hours after its receipt. See App. to Pet. for Cert. B-3. The inmate may seek judicial review of a committee decision in state court by means of a personal restraint petition or extraordinary writ. See Wash.Rules App.Proc. 16.3 to 16.17; App. to Pet. for Cert. B-8.

Fourth, after the initial hearing, involuntary medication can continue only with periodic review. When respondent first refused medication, a committee, again composed of a nontreating psychiatrist, a psychologist, and the Center's Associate Superintendent, was required to review an inmate's case after the first seven days of treatment. If the committee reapproved the treatment, the treating psychiatrist was required to review the case and prepare a report for the Department of Corrections medical director every 14 days while treatment continued.

*Washington v. Harper*, 494 U.S. 210, 215–16 (1990) (footnotes omitted).

Within the Michigan Department of Corrections, the procedure for the involuntary treatment of a prisoner with psychotropic medication is set forth in MDOC Policy Directive 04.06.183. This policy directive provides that a prisoner may be temporarily subjected to involuntary treatment with psychotropic medication where the following conditions are met: "a psychiatrist's certificate [is] executed which states [that] the prisoner is mentally ill," the psychiatrist also concludes that the prisoner "is a present danger to himself or herself or to others;" "the prisoner refuses treatment;" and the psychiatrist orders "involuntary administration of psychotropic medication pending the convening of a Hearing Committee." *See* MDOC Policy Directive 04.06.183 ¶¶ Q-R.

The prisoner must be provided with a copy of the "Psychiatric Certificate, Psychiatric Report, QMHP [qualified mental health professional] Report, and a notice of hearing and rights to the prisoner and, if one has been appointed, to the guardian of the person" prior to the hearing committee being convened. MDOC Policy Directive 04.06.183 ¶ S. The prisoner must be assigned a Mental Health Advisor and must not be medicated for twenty-four hours prior to the hearing. *Id.* at ¶ T. The hearing committee must consist of "a psychiatrist, a fully licensed psychologist, and another mental health professional whose licensure or registration requirements include a minimum of a baccalaureate degree from an accredited college or university, none of whom is, at the time of the hearing, involved in the prisoner's treatment or diagnosis." *Id.* at ¶ C. The hearing committee must consider "the QMHP Report alleging that the prisoner is mentally ill, the Psychiatric Report, the Psychiatrist's Certificate, proof that a notice of hearing has been served, proof that the prisoner has not been medicated within 24 hours and any other admissible evidence presented at the hearing." *Id.* at ¶ W. The prisoner has the right to attend the hearing, may bring along his or her guardian, and is entitled to the assistance of his or her mental health advisor. *Id.*

at ¶ X. The prisoner may present evidence, including witnesses, and may cross-examine witnesses. *Id.* The hearing committee must then "determine whether the prisoner is mentally ill and, if so, whether the proposed mental health services are suitable to the prisoner's condition. A finding of mental illness must be confirmed by the psychiatrist on the Hearing Committee to be valid." *Id.* at ¶ Y. The committee must prepare an official record of the hearing, and must present to the prisoner a report of their findings and orders, along with an appeal form. *Id.* at ¶¶ Z-AA. The initial period of treatment may not exceed ninety days. *Id.* at ¶ AA. The prisoner may then appeal the hearing committee's decision to the Director of the Corrections Mental Health Program with the assistance of their mental health advisor; prisoner may then appeal that decision to the state circuit court. *Id.* at ¶ DD. The policy also provides for renewal of the medication order. *Id.* at ¶¶ EE-FF. The prisoner is also entitled to a copy of the corrections mental health program ("CMHP") guidebook which contains "rights information," and is to be offered an "opportunity to consult with staff from the Office of the Legislative Corrections Ombudsman." *Id.* at ¶ GG.

Because none of the members of the hearing committee may be involved in the inmate's current treatment or diagnosis, the MDOC policy provides for an independent decisionmaker. The policy also provides that the inmate has right to be present at the hearing and present evidence, and can appeal the decision to the Director of the CMHP and the circuit court. Therefore, it is clear that the MDOC policy passes rational basis scrutiny and satisfies procedural due process. *Harper*, 494 U.S. at 233-35.

Plaintiff's allegations show that he received a hearing, that he was present at the hearing, and that he appealed the decision to the Director of the CMHP without success. However, Plaintiff also claims that he was not told of his right to appeal to the state circuit court. In *Harper*, the Court stated:

Under Policy 600.30, the decisionmaker is asked to review a medical treatment decision made by a medical professional. That review requires two medical inquiries: first, whether the inmate suffers from a "mental disorder"; and second, whether, as a result of that disorder, he is dangerous to himself, others, or their property. Under the Policy, the hearing committee reviews on a regular basis the staff's choice of both the type and dosage of drug to be administered, and can order appropriate changes. 110 Wash.2d, at 875, 759 P.2d, at 360. The risks associated with antipsychotic drugs are for the most part medical ones, best assessed by medical professionals. A State may conclude with good reason that a judicial hearing will not be as effective, as continuous, or as probing as administrative review using medical decisionmakers. We hold that due process requires no more.

*Id*. at 232-33. Therefore, Plaintiff's contention that his due process rights were violated because no one told him that he could file another appeal with the state circuit court lacks merit. Accordingly, the Court will dismiss Plaintiff's due process claims.

Plaintiff also claims that his involuntary treatment with an antipsychotic medication violated the Eighth Amendment. In an unpublished opinion addressing such a claim, the Sixth Circuit has held that the Eighth Amendment was not violated by the involuntary administration of lithium to a mentally ill patient:

There is a recognized Eighth Amendment protection for prisoners against "deliberate indifference" to a serious medical need, but that indifference generally involves the *failure* to provide medical care. *See Estelle v. Gamble,* 429 U.S. 97, 104, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976). In cases like Kramer's, where the medical personnel are treating him and have made a decision about the precise course of action he requests, claims are generally unsuccessful. *E.g., Davis v. Agosto,* 89 F. App'x 523, 529 (6th Cir. 2004) (denying Eighth Amendment claim on summary judgment where defendant argued that the unwanted treatment of a head wound unnecessarily inflicted pain upon him).

This is because *failing* to prevent medical harm only "rises to the level of a constitutional violation where both objective and subjective requirements are met." *Harrison v. Ash,* 539 F.3d 510, 518 (6th Cir. 2008). Where the prisoner was in the care of a doctor (and the allegation is deliberate indifference based on care given and not intentional infliction of pain), our cases offer two verbal

formulations to describe when a doctor's actions were subjectively callous so as to be constitutionally cruel and unusual punishment. First, if the prisoner received "grossly inadequate care," we will conclude a doctor acted with "subjective" deliberate indifference. *Perez v. Oakland County,* 466 F.3d 416, 424 (6th Cir.2006). Second, we favorably cited the Eleventh Circuit's test: "whether a reasonable doctor ... could have concluded his actions were lawful." *Terrance v. Northville Reg'l Psychiatric Hosp.,* 286 F.3d 834, 844 (6th Cir. 2002) (quoting *Waldrop v. Evans,* 871 F.2d 1030, 1034 (11th Cir. 1989)). While both approaches lack absolute analytic precision, it is clear that Kramer has not alleged facts that rise to the level of seriousness they convey. Kramer asserts only that he disagrees with the decision to keep him on lithium in the face of the risk of kidney failure and that outside doctors have not been permitted to review the decision made by the prison's medical professionals. This does demonstrate a possible disagreement over which health problem-the mental disorder or the risk of kidney problems-posed a more serious medical threat to Kramer. But it is far short of an allegation of "grossly inadequate care" or unlawful behavior. *Cf. Terrance,* 286 F.3d at 844-47 (holding that doctors and nurses could be found to have provided grossly inadequate care after they failed to supervise decedent or plan for risks associated with decedent's medical conditions despite their knowledge of immediate risk factors of sudden death). That is, even if he were to prove the disagreement at trial, he would not be entitled to relief because no alleged fact tends to show that the prison doctors provided "grossly inadequate care" or that their treatments were so medically unsound as to violate the law.

*Kramer v. Wilkinson*, 302 F. App'x 396, 400–01 (6th Cir. 2008).

As in *Kramer*, Plaintiff in this case has failed to allege facts which show that he received "grossly inadequate care." Therefore, Plaintiff's Eighth Amendment claims are properly dismissed.

Finally, the Court notes that Plaintiff also asserts a violation of state law. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants

violated state law therefore fails to state a claim under § 1983. Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claim will be dismissed without prejudice to his ability to pursue those claims in state court.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the Defendants will be dismissed for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: November 3, 2017                  /s/ Gordon J. Quist
                                           GORDON J. QUIST
                                   UNITED STATES DISTRICT JUDGE